RENDERED: OCTOBER 14, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0348-MR

STEVEN WAYNE ARNETT　　　　　　　　　　　　　　　APPELLANT

APPEAL FROM GREEN CIRCUIT COURT
v.　　　　　　HONORABLE SAMUEL TODD SPALDING, JUDGE
ACTION NO. 07-CI-00148

MONICA MICHELLE CHILDRESS　　　　　　　　　　　　　APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; COMBS AND JONES, JUDGES.

JONES, JUDGE: Steven Wayne Arnett appeals a judgment of the Green Circuit

Court in favor of his ex-wife, Monica Michelle Childress, for $8,640 and accrued

interest of 6% representing an arrearage of what he owed Childress pursuant to the

terms of their 2007 divorce decree. Arnett asserts the circuit court erred in

awarding Childress post-judgment interest. Upon review, we affirm.

The factual and procedural history of this matter is as follows. On November 16, 2007, during their divorce proceedings in Green Circuit Court, Arnett and Childress entered into a separation agreement which provided in relevant part:

> In full settlement of all personal property, [Arnett] shall further pay to [Childress] the amount of twenty-six thousand eight hundred fifty dollars ($26,850.00) in the following increments, to wit:
>
> . . .
>
> b. [Arnett] shall pay to [Childress] ten thousand dollars ($10,000.00) on April 1, 2008; and
>
> c. [Arnett] shall pay to [Childress] ten thousand dollars ($10,000.00) on July 1, 2008.

On December 26, 2007, when the parties' marriage was dissolved, the circuit court incorporated the parties' separation agreement into its divorce decree. Notably, the separation agreement and divorce decree were both silent regarding interest.

The record is also silent until October 7, 2020, when Childress filed a motion to hold Arnett in contempt. In her motion, Childress informed the circuit court that Arnett had yet to pay her anything toward the outstanding amounts set forth above; and she asked the circuit court to compel Arnett to pay her the

outstanding $20,000 he owed "with interest thereon pursuant to KRS[1] 360.040."

However, at the initial contempt hearing that followed, Arnett denied Childress's

contention. He represented he had paid Childress most or all of what was owed –

not so much in money, but by providing her *services* pursuant to what he asserted

had been a valid modification of the parties' separation agreement.

On January 22, 2021, the circuit court held an evidentiary hearing

regarding Arnett's assertion that he was entitled, due to a post-decree modification

of the separation agreement, to have the value of services he had rendered for

Childress credited toward what he owed her. The footage of that hearing is not of

record, nor did Arnett designate it as part of the record. Thus, we are left to

presume that the findings of fact set forth in the circuit court's January 26, 2021,

order, which recounted and relied upon much of what was apparently adduced at

that hearing, were consistent with the evidence. *See Commonwealth, Dep't of*

*Highways v. Richardson*, 424 S.W.2d 601, 603 (Ky. 1967), *as modified on denial*

*of reh'g* (Feb. 23, 1968).

To summarize, it was undisputed that Arnett failed to pay Childress

any of the $20,000 he owed her pursuant to the separation agreement and decree.

However, the circuit court found the parties had verbally – and validly – agreed to

modify their separation agreement sometime after December 26, 2007, to permit

---

[1] Kentucky Revised Statute.

Arnett to perform various jobs for Childress and to offset the value of his work from the $20,000 judgment. The circuit court also found that Arnett had performed several odd jobs for Childress during the intervening years, and thus "significant work" pursuant to their modified agreement.

But, as recognized by the circuit court, there were problems with the parties' agreement. Arnett and Childress never agreed upon a monetary value for any of the work Arnett performed pursuant to the modified agreement. And, for the most part, the two of them either could not recall or could not agree when he performed the work. As the circuit court found, Arnett first attempted to itemize and value his work for Childress in 2019, "only after being contacted by [Childress] about the payment of the indebtedness owed." Consequently, the circuit court devoted much of its order to itemizing and assigning monetary values to the various jobs Arnett had performed for Childress over the years pursuant to the parties' modified agreement. Ultimately, the circuit court concluded that the value of Arnett's services totaled $11,360, leaving $8,640 due to Childress. The circuit court then ordered that the arrearage "shall bear interest at the legal rate of six (6) percent, effective July 1, 2008."

Arnett moved the circuit court to alter, amend, or vacate its arrearage judgment, arguing in relevant part:

> In the case at bar, [Childress] was aware of the terms of
> the settlement agreement and chose not to file a Motion

to enforce the agreement until 12 years after the last payment required by the Settlement Agreement was due. Additionally, [Arnett] and [Childress] modified the agreement to allow [Arnett] to work off the amount owed. Had [Arnett] been aware [Childress] was going to renege on the modified agreement and demand payment plus interest, he would have made the payments years ago. It is a flagrant miscarriage of justice to award [Childress] interest in the case at bar, especially considering the amount of interest owed would result in doubling the amount owed to [Childress] pursuant to the parties' modified agreement.

The circuit court denied Arnett's motion. In its February 23, 2021, order to that effect, it began by noting the general rule, as set forth in *Doyle v. Doyle*, 549 S.W.3d 450 (Ky. 2018), that *all* judgments bear interest. It went on to recognize that it lacked the discretion to either *deny* interest or depart from the statutorily mandated rate of interest without first determining that the claim was unliquidated or an interest rate was specified in a separate written agreement. *Id.* at 456. Further, the circuit court held that while the "damages ordered are best characterized as unliquidated," which provided it discretion to determine an interest rate less than the statutory amount pursuant to KRS 360.040(4), the equities did not favor a lesser amount here. In relevant part, it explained:

> [T]he coercive measures of the statute are necessary to encourage a party to make timely payments. While this Court does find there was an oral agreement [Arnett] would do work in exchange for a reduction of payment, there is no dispute the payment of the remaining balance is long overdue in the current case. Additionally, the initial agreement in this case was entered on November

16, 2007. [Arnett] was to pay $10,000 by April 1, 2008 and the final payment was to be made on July 1, 2008. It is undisputed [Arnett] did not complete the excavation work until 2014 at the earliest. Additionally, [Arnett] completed the septic work in 2014. It is unclear as to when the other services were provided. [Arnett] had the responsibility to pay and this Court has been generous in crediting [Arnett] with the work performed to offset his obligation. Accordingly, this Court finds the order of pre-judgment interest is equitable. Interest will be ordered at the statutory rate of 6% outlined within KRS 360.040 from the date of original decree of dissolution for the unpaid amount.

This appeal followed. To be clear, the parties do not contest that Arnett was entitled to an $11,360 credit against what he owed Childress pursuant to the separation agreement and divorce decree pursuant to a valid post-decree modification. They do not contest the circuit court's finding that, due to the parties' poor recordkeeping and lack of agreement regarding the value of Arnett's services, the arrearage judgment represented an award of unliquidated damages. Rather, only one issue is presented. Arnett's sole argument is that the circuit court erred by directing him to pay *any* interest whatsoever in relation to Childress's judgment against him. In support, Arnett cites *Guthrie v. Guthrie*, 429 S.W.2d 32 (Ky. 1968), where our then highest court held that although interest should be imposed on past due child support, it may be denied where there are circumstances making it inequitable. The *Guthrie* Court concluded that where the father in that matter had paid for the children's expenses rather than his child support obligation,

the equities could weigh in favor of relieving him of paying interest on the amount owed. *Id*. at 37.

Before discussing how Arnett believes the "equities" weighed in his favor, we note Arnett ignores that what our highest court stated in *Guthrie* (*i.e.*, that judgment interest may be entirely denied) is at odds with its more recent and binding pronouncement in *Doyle*: "*All judgments bear interest.*" *Doyle*, 549 S.W.3d at 456 (emphasis added). If *Guthrie* represents any viable exception to that rule, it is an exception that clearly does not apply to these facts: *Guthrie* involved interest on payments of child support, whereas *Doyle* – like this matter – specifically involved interest on an outstanding obligation stemming from the division of marital assets. Thus, irrespective of his reasoning, Arnett is incorrect in arguing he was entitled to pay *no* judgment interest.

With that said, we now proceed to how, in Arnett's view, the "equities" favored his case. Arnett first contends Childress prejudiced him by failing to seek judicial enforcement of their 2007 divorce decree until October 7, 2020.

We disagree. Childress acted within the time permitted by the applicable statute of limitations to collect the arrearage and interest owed to her pursuant to the divorce decree. KRS 413.090(1). Principles of equity, such as laches or estoppel by acquiescence, may not be used to bar the collection of

arrearages within the applicable limitations period. *Heisley v. Heisley*, 676 S.W.2d 477, 477 (Ky. App. 1984). Moreover, relative to the specific issue of judgment interest, Childress's delay is not a factor to be considered *at all*. In *Doyle*, 549 S.W.3d at 457, our Supreme Court observed that where a former spouse failed to comply with a court order, criticism of the efforts of his former partner to collect should have no bearing on the imposition of interest that accrued by operation of law. The court observed that the provisions of KRS 360.040 are not designed to be punitive but are meant to encourage a judgment debtor to comply promptly with the terms of the judgment and to compensate the judgment creditor for the judgment debtor's use of her money. *Id*. at 458.

As for the remainder of his arguments regarding how the "equities" weighed in his favor, Arnett next contends:

> [T]he parties' modified the agreement and [Arnett] made reasonable and diligent efforts to comply with the modified agreement to work off the balance owed to [Childress]. Further, has [sic] [Arnett] been aware [Childress] was going to renege on her part of the modified agreement and demand full payment plus interest, he would have made payments on the balance rather than allowing 12 years of interest accrue against him.

Regarding Arnett's assertion that he made "reasonable and diligent efforts to comply with the modified agreement to work off the balance owed" to Childress, the circuit court made no such finding; and Arnett cites no evidence of

record favoring his argument. True, the circuit court gave him a credit for what it determined was the reasonable value of the work he performed under the modified agreement; but *when* Arnett and Childress entered that agreement is not evident from the record. Thus, it is unclear how long Childress may have waited for Arnett to perform any given service. To the extent the circuit court assigned any time frame to any of the work Arnett performed under the agreement, it could only state Arnett performed some of it in 2014.

As to Arnett's assertion that he "would have made payments on the balance rather than allowing 12 years of interest accrue against him[,]" the circuit court likewise made no such finding, and Arnett cites no evidence of record favoring his argument. It is unclear how long Childress may have waited – unsuccessfully – for Arnett to pay her anything before she ultimately agreed to allow him to credit services toward his debt. Again, however, to the extent the circuit court assigned any date to any of the work Arnett performed under the parties' modified agreement, it could only state Arnett performed it in 2014 – approximately seven years *after* Arnett's $20,000 debt to Childress had already become an outstanding obligation.

As to his assertion that Childress "renege[d] on her part of the modified agreement" by demanding judgment interest, the circuit court only determined the modified agreement permitted Arnett to perform various jobs for

Childress and to offset the value of his work from the $20,000 judgment. The circuit court made no determination that the modified agreement *also* provided Arnett would not owe Childress judgment interest on what remained of the principal balance. Nor, for that matter, does Arnett cite any evidence indicating Childress ever represented to him – much less *agreed* with him – that he would not owe her judgment interest on what remained.

Instead, reading between the lines of his brief, it appears much of what led Arnett to believe he could "work off" an *interest-free* $20,000 balance owed to Childress arises from his own unilateral assumption; specifically, his assumption that because the parties' November 16, 2007 separation agreement – as incorporated into the December 26, 2007 divorce decree – was *silent* regarding interest, no interest would ever be owed. However, it is inarguable that "everyone is presumed to know the law; therefore, ignorance of the law is not an excuse." *Dep't of Revenue, Finance v. Revelation Energy, LLC*, 544 S.W.3d 170, 176 (Ky. App. 2018). And here, the law provided at all relevant times that a judgment merely *silent* about interest should not be interpreted as an *interest-free* judgment. *See, e.g.*, *Commonwealth, Dep't of Highways v. Young*, 380 S.W.2d 239, 240 (Ky. 1964) ("[T]he fact that a judgment or decree is silent as to interest will not prevent the recovery of interest thereon.").

Indeed, this rule has been applied before in the same situation. In *Hoskins v. Hoskins*, 15 S.W.3d 733 (Ky. App. 2000), the parties, Pam and Kevin, entered into a property settlement agreement which required Kevin to pay Pam $7,500 within three years of October 10, 1990. Their agreement was incorporated into the trial court's subsequent divorce decree; however, their agreement and divorce decree made no mention of judgment interest. *Id*. at 733-34. Thereafter, Kevin refused to pay by the deadline; and Pam sought an order compelling Kevin to pay her $7,500 pursuant to the terms of the agreement, plus interest at the annual rate of 12% from October 10, 1993.[2] *Id*. at 734.

Ultimately, the trial court entered judgment in Pam's favor for $7,500, but only with interest accrued from the date of its dispositive judgment (*i.e.*, October 7, 1998). *Id*. On appeal, this Court reversed and remanded the case to the trial court with directions to award Pam post-judgment interest at the statutory rate of 12% from October 10, 1993, on Kevin's $7,500 delinquent debt unless the trial court found such an award to be inequitable. *Id.* at 735. We explained:

> In *Courtenay* [*v. Wilhoit*, 655 S.W.2d 41 (Ky. App. 1983)], the property settlement agreement that was incorporated into the divorce decree ordered the husband to pay the wife $140,000 in 121 equal monthly installment payments for her share of the property division. Both the agreement and the decree were silent with respect to interest. The wife later moved the court

---

[2] The version of KRS 360.040 effective at that time (and until June 29, 2017) provided that "12%" was the default rate of statutory interest.

-11-

to award her interest on the amount from the date of the agreement. The court held that the interest statute applied to the separation agreement incorporated into the divorce decree, "but not until a judgment comes into being via a delinquent payment." *Id*. at 42. In other words, the husband was not required to pay interest unless he missed a payment. The court held that since the husband had kept his payments current, there was no judgment to which KRS 360.040 could apply. *Id*.

Under the principles of *Courtenay*, the provision in the property settlement agreement and decree ordering Kevin to pay Pam $7,500 within three years from the date of the agreement became an enforceable judgment when the payment became delinquent at the end of three years. Furthermore, KRS 403.180(5) provides that "[t]erms of the agreement set forth in the decree are enforceable by all remedies available for enforcement of a judgment, including contempt, and are enforceable as contract terms." Thus, we conclude that the trial court erred in its 1998 order when it stated that there was no judgment in effect until that time. Pam was therefore entitled to interest under KRS 360.040 at the annual rate of 12% from October 10, 1993, unless such an award would be inequitable. *Courtenay*, 655 S.W.2d at 42. *See also Stone v. Ky. Ins. Guaranty Ass'n*, Ky. App., 908 S.W.2d 675, 677 (1995); *Guthrie v. Guthrie*, Ky., 429 S.W.2d 32, 36 (1968); *Young v. Young*, Ky., 479 S.W.2d 20, 22 (1972); *Hardin v. Hardin*, Ky. App., 711 S.W.2d 863, 865 (1986).

*Id*. at 734-35 (footnote omitted).

As in *Hoskins*, the provisions in the property settlement agreement and decree ordering Arnett to pay Childress $10,000 on April 1, 2008, and $10,000 on July 1, 2008, became enforceable judgments – and entitled Childress to post-

-12-

judgment interest despite the separation agreement's and divorce decree's silence on that point – when those respective payments became delinquent.

We review awards of post-judgment interest under the abuse of discretion standard. *Hazel Enterprises, LLC v. Ray*, 510 S.W.3d 840, 843 (Ky. App. 2017). Here, in sum, Arnett presents nothing demonstrating the circuit court's award of 6% interest in its arrearage judgment was inequitable to him, or that the circuit court otherwise committed an abuse of its discretion that prejudiced his interests. To the contrary, the circuit court effectively pretended that Arnett had rendered *all* his services for Childress *before* the $20,000 he owed her had become delinquent, as it only assessed judgment interest on $8,640 (*i.e.*, what remained of what he owed her, minus his setoff for services rendered).

Additionally, the circuit court assessed post-judgment interest from July 1, 2008, at a rate of *only* 6%. It could have held that judgment interest accrued on Childress's judgment at a rate of up to 12% until June 29, 2017 – the effective date of the most recent enactment of KRS 360.040, which only prospectively lowered statutory judgment interest from 12% to its current rate of 6%. *See Ridge v. Ridge*, 572 S.W.2d 859, 861 (Ky. 1978) (explaining the prospective rather than retroactive effect of a statutory amendment of a post-judgment interest rate). The circuit court balanced the facts and equities in an appropriate manner, and its ultimate decision "falls within a range of permissible

-13-

decisions." *Miller v. Eldridge*, 146 S.W.3d 909, 915 (Ky. 2004).  In short, Arnett

presents no basis of error.  We therefore, AFFIRM.


ALL CONCUR.



BRIEF FOR APPELLANT:          BRIEF FOR APPELLEE:

Elmer J. George                        Theodore H. Lavit
Lebanon, Kentucky                      Lebanon, Kentucky