RENDERED:  JANUARY 6, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1145-MR

CRISTINA ARCE                                                          APPELLANT

v.        APPEAL FROM HARDIN CIRCUIT COURT
          HONORABLE M. BRENT HALL, JUDGE
          ACTION NO. 06-CI-00182

JAVIER ARCE, MD                                                        APPELLEE

AND

NO. 2021-CA-1181-MR

JAVIER ARCE, MD                                               CROSS-APPELLANT

v.        CROSS-APPEAL FROM HARDIN CIRCUIT COURT
          HONORABLE M. BRENT HALL, JUDGE
          ACTION NO. 06-CI-00182

CRISTINA ARCE                                                 CROSS-APPELLEE

## OPINION
## AFFIRMING IN PART, REVERSING IN PART, AND REMANDING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; DIXON AND GOODWINE, JUDGES.

GOODWINE, JUDGE:  Cristina Arce ("Cristina") appeals from the September 3, 2021 order of the Hardin Circuit Court, Family Division.  Her former spouse, Javier Arce ("Javier") cross appeals.  After careful review, we affirm, in part, reverse, in part, and remand.

## BACKGROUND

The marriage between the parties was dissolved by decree of the family court in 2008.  In part, the parties were ordered to liquidate and equally divide funds in a Fidelity Investments account which amounted to approximately $307,000.00 at the time of dissolution.  No deadline was set for liquidation and division of the account.

In 2009, with Cristina's consent, Javier withdrew $255,000.00 from the Fidelity account.  Javier used the funds to pay off a mortgage on a property in Florida for which he was jointly responsible with the parties' adult daughter.  The parties then jointly took ownership of the property and collected rent on the

property until it was sold in 2016 for $209,000.00. Each party received $94,729.49 in proceeds from the sale.[1]

In November 2010, without Cristina's knowledge, Javier withdrew $59,000.00 from the Fidelity account. Javier acknowledges he owes Cristina one-half of the $59,000.00, or $29,500.00.

An agreed order entered on October 9, 2008, addressed two properties jointly owned by the parties in Florida. They agreed to continue to jointly own the properties and to equally share responsibility for the associated taxes and expenses. The parties agreed to sell the properties within two years of the agreement. Additionally, the parties agreed:

> In order to equalize the division of property set forth hereinabove, [Javier] shall pay to [Cristina] the sum of $82,815.50. One-half of this shall be paid within 30 days from the date of this agreement. The remaining one-half shall be paid, without interest, within two years from the date of this document or when the parties' Florida real estate is sold, whichever first occurs.

Record ("R.") at 1153-54. Javier agreed to pay Cristina an additional $2,500.00 within thirty days of entry of the order. The parties did not sell the Florida properties within the requisite two years. Javier did not pay Cristina the $82,815.50 or the $2,500.00.

---

[1] In 2015, the parties' daughter transferred her interest in the property to them.

Javier claimed to have paid approximately $80,000.00 in taxes on the Florida properties out of his personal funds in December 2008, after entry of the decree of dissolution and agreed order. On this basis, he requested the $82,815.50 he owed Cristina be offset by the amount he paid in taxes.

In 2018, Cristina filed motions for enforcement of terms of the decree and agreed order. She also requested Javier be required to pay interest on the first $41,407.75 payment from the date it was due to be paid, thirty days after entry of the agreed order. She demanded interest on the second payment from the date of the end of the two-year period in which she agreed Javier would not have to pay interest. Cristina further requested interest on the additional $2,500.00 Javier agreed to pay her under the agreed order. She also moved for attorney fees, consultant fees, and costs.[2]

Javier then moved to dismiss Cristina's motions arguing the parties operated as a partnership after their divorce. Essentially, Javier argued the parties continued to operate as they had during the marriage during the ten years after its dissolution, including continuing to jointly own and purchase new real estate. They jointly leased property and earned income thereon. On this basis, Javier raised the defenses of laches and waiver, as well as alleged Cristina should be required to raise her claims through a separate action in another division of the

---

[2] Cristina hired a consultant to assist her in collecting funds from Javier in 2018.

circuit court. The family court agreed with Javier and dismissed Cristina's motions. Upon Cristina's appeal, this Court vacated the family court's order and remanded the matter to the family court for consideration of the merits of the parties' arguments. *Arce v. Arce*, No. 2019-CA-1371-MR, 2021 WL 1163986 (Ky. App. Mar. 26, 2021).

The family court heard the parties' arguments and found the following:

1. Cristina is entitled to $29,500.00, her half of the $59,000.00 Javier withdrew from the Fidelity account without her knowledge;

2. The court did not have jurisdiction to award Cristina the $32,770.31 she requested related to the sale of the daughter's Florida property because the nonmarried parties, "as a joint venture or general partnership[,]" agreed to jointly use the funds from the Fidelity account to pay off the mortgage after entry of the decree;

3. Under the agreed order, Javier owes Cristina payments of $82,815.50 and $2,500.00;

4. The $80,000.00 in property taxes Javier paid should be born equally by the parties as required by the agreed order, and the parties may agree to credit the $40,000.00 in property taxes owed by Cristina against the total amount owed by Javier; and

5. Cristina's requests for interest, fees, and costs were denied "as the parties have significant and substantial resources at their disposal."

R. at 1334-40. Furthermore, the court determined it was without jurisdiction to determine several issues related to matters which originated after dissolution of the parties' marriage. This appeal and cross-appeal followed.

## STANDARD OF REVIEW

Where an issue arises from a family court's interpretation or enforcement of its own order, we review issues of law *de novo*. *Harvey v. Robinson*, 514 S.W.3d 1, 6 (Ky. App. 2017) (citing *In re Nat'l Gypsum Co.*, 219 F.3d 478, 484 (5th Cir. 2000)). Issues related to enforcement of agreements between parties which distribute marital property involve questions of contract interpretation. KRS[3] 403.180(5). These questions of law are also reviewed *de novo*. *Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky. App. 1998).

The family court's decision on attorney fees is reviewed for abuse of discretion. *Sexton v. Sexton*, 125 S.W.3d 258, 272 (Ky. 2004) (footnote omitted).

## ANALYSIS

On appeal, Cristina argues: (1) the family court erred by refusing to award her $32,770.31 for the funds she was owed from the Fidelity account; (2) the family court erred by declining to award interest on the funds owed to her; (3)

---

[3] Kentucky Revised Statutes.

the family court erroneously divided responsibility for the $80,000.00 in taxes on the two Florida properties; and (4) the family court improperly denied her requests for fees and costs. On cross-appeal, Javier argues the family court should have dismissed all of Cristina's claims under the doctrine of laches or waiver or, in the alternative, should have transferred the case to a non-family division of the circuit court.

First, Cristina alleges the family court erred by declining to award her $32,770.31 to make up for the funds she did not recoup from the sale of the property previously owned by the parties' daughter in Florida. She claims she is owed these funds under the terms of the decree because she allowed Javier to use $127,500.00 of the funds to which she was entitled from the Fidelity account to pay off the mortgage on the property. Cristina asserts this is not an issue regarding Florida real estate, as found by the family court, but is one concerning division of the Fidelity account funds.

We agree this is an issue of division of the Fidelity account funds. However, Cristina waived her claim to these funds. Waiver "is a voluntary and intentional surrender or relinquishment of a known right, or an election to forego an advantage which the party at his option might have demanded or insisted upon." *Sexton v. Commonwealth*, 647 S.W.3d 227, 231 n.2 (Ky. 2022) (citing *Vinson v. Sorrell*, 136 S.W.3d 465, 469 (Ky. 2004) (citation omitted)).

Here, Cristina knew of her rights to the Fidelity account funds when she agreed to withdraw the $255,000.00 in 2009. The fact that Cristina was not a party to the mortgage is not determinative. She then assumed joint ownership of the property and collected rental income until the sale in 2016. While the property may not have sold for an amount sufficient for the parties to recover their investment, Cristina's actions show a clear intent to relinquish her interest in the funds when she chose to withdraw and reinvest them. Therefore, she is not entitled to $32,770.31.[4]

Next, Cristina argues she was entitled to interest on the funds awarded to her under KRS 360.040. Specifically, she requests:

1. Six percent interest on $29,500.00 from November 2010, the date Javier withdrew the funds from the Fidelity account;

2. Six percent interest on the first payment of $41,407.75 and $2,500.00 from November 8, 2008, thirty days after entry of the agreed order; and

---

[4] We acknowledge the family court did not base its decision on this reasoning, but we are not precluded from considering it because we may affirm a lower court for any reason supported by the record. *Lynn v. Commonwealth*, 257 S.W.3d 596, 599 (Ky. App. 2008) (citation omitted).

3. Six percent interest on the second payment of $41,407.75 from October 9, 2010, two years from the date of entry of the agreed order.[5]

The family court declined to award interest because the parties had substantial resources at their disposal.

KRS 360.040(1) requires "[e]xcept as provided in subsections (2), (3), and (4) of this section, a judgment, including a judgment for prejudgment interest, shall bear six percent (6%) interest compounded annually from the date the judgment is entered." A judgment becomes enforceable for interest purposes when a payment becomes delinquent. *Hoskins v. Hoskins*, 15 S.W.3d 733, 735 (Ky. App. 2000) (citation omitted). Here, the parties were ordered to liquidate and equally divide the funds from the Fidelity account. However, the family court did not set a deadline for such actions. Therefore, unlike the facts in *Hoskins*, interest cannot accrue where there is no date on which a payment becomes delinquent. In fact, the decree does not require any payment from one party to another. Therefore, Cristina is not entitled to interest on the $29,500.00.

However, Cristina is entitled to interest on the claims made under the terms of the agreed order. Therein, the first payment of $41,407.75 and the

---

[5] Cristina also requested interest on the $32,770.31 to which she claimed entitlement. We need not address this claim based on our conclusion that she waived her right to the funds.

additional payment of $2,500.00 became enforceable as judgments on the date they became delinquent, November 8, 2008. *See Hoskins*, 15 S.W.3d at 735. For liquidated damages, interest must be awarded at the statutory rate set forth in KRS 360.040(1). *Doyle v. Doyle*, 549 S.W.3d 450, 456 (Ky. 2018). Therefore, Cristina is entitled to interest at six percent for both the first payment of $41,407.75 and $2,500.00.[6]

As to the second payment of $41,407.75, Javier claims he does not owe interest because the terms of the agreed order preclude it. The order states, "[t]he remaining one-half shall be paid, without interest, within two years from the date of this document or when the parties' Florida real estate is sold, whichever first occurs." R. at 1153-54. The terms of a settlement agreement which has been incorporated into a decree of dissolution is enforceable as a contract. *McMullin v. McMullin*, 338 S.W.3d 315, 320 (Ky. App. 2011) (citations omitted); *see also* KRS 403.180(5). Like settlement agreements, agreed orders between parties are interpreted as contracts. *See McNeill v. Mackey*, No. 2015-CA-001157-ME, 2016 WL 3675147, *2 (Ky. App. Jul. 1, 2016) (citing KRS 403.180(5); *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky. 2003)).[7] "Absent an ambiguity in the

---

[6] KRS 360.040 was amended on June 28, 2017. Prior to that date, the statutory interest rate was twelve percent. Cristina waived any claim to interest at the higher rate during proceedings below.

[7] We cite this unpublished opinion as persuasive, not binding, authority. *See* Kentucky Rules of Appellate Procedure (RAP) 41(A).

-10-

contract, the parties' intentions must be discerned from the four corners of the instrument without resort to extrinsic evidence." *Cagata v. Cagata*, 475 S.W.3d 49, 56 (Ky. App. 2015) (citation omitted).

A plain reading of this clause shows the parties intended for the period wherein interest would not be required to be the two years directly after entry of the order during which the parties agreed to sell the two properties. However, when the properties were not sold within that time and Javier did not make the payment, the terms became enforceable as a judgment. Therefore, Cristina is also entitled to interest on the second payment of $41,407.75 at the statutory rate from October 9, 2010.

Next, Cristina argues she is not responsible for half of the $80,000.00 in property taxes Javier paid in December 2008 for the Florida properties. However, this claim directly contradicts the terms of the agreed order entered in October 2008. Cristina acknowledges she knew the 2006 and 2007 property taxes had not been paid when she agreed to the terms of the agreed order. She then agreed that "[u]ntil such time as the property is sold, the parties will be **equally responsible to pay the taxes**, repairs or other expenses associated with the property that exceed any income associated with the property." R. at 1153 (emphasis added). Under the plain meaning of these terms, Cristina agreed to be equally responsible for property taxes. We find no error.

-11-

Finally, Cristina argues she was entitled to attorney fees, consultant fees, and costs. She claims she is entitled to these fees and costs under KRS 403.220. Under the same reasoning applied to its decision on interest, the court declined to award these funds because "the parties have significant and substantial resources at their disposal." R. at 1340.

Unlike the statute governing interest on judgments, there is nothing mandatory in KRS 403.220. *See Bootes v. Bootes*, 470 S.W.3d 351, 356 (Ky. App. 2015). The family court has broad discretion in determining whether to award attorney fees. *Age v. Age*, 340 S.W.3d 88, 97 (Ky. App. 2011) (citation omitted). Such a decision will only be overruled if it was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* This matter has been before the family court since Javier petitioned for dissolution of the marriage in 2006. Thereafter, the parties litigated various issues related to their financial assets and property. On this basis, the family court had extensive knowledge of the considerable financial resources available to both parties. Therefore, the court did not abuse its discretion in declining to award fees and costs.

We will now consider Javier's claims. His defenses of laches and waiver rest on the fact that neither party attempted to enforce the courts orders for approximately ten years, and, during the intervening years, the parties operated as business partners and participated in joint ventures. They shared bank accounts

and jointly managed and purchased real estate. Javier also paid criminal penalties on behalf of both parties after they were divorced.[8] On this basis, he claims the parties, either explicitly or implicitly, agreed to modify the terms of the decree and agreed order.

Laches is an affirmative defense. The party pleading laches must prove both the other party unreasonably delayed assertion of a right and, as a result, he was prejudiced. *See Satterfield v. Satterfield*, 608 S.W.3d 171, 174 (Ky. App. 2020) (citation omitted). Here, like in *Satterfield*, Cristina is plainly entitled to the funds awarded to her under the decree and agreed order. The record also clearly shows Cristina knew of her rights under the orders and did not attempt to enforce them for ten years.

However, delay alone is insufficient to sustain a defense of laches. *Fergerson v. Utilities Elkhorn Coal Co.*, 313 S.W.2d 395, 400 (Ky. 1958). Instead, the delay must have also prejudiced Javier. Specifically, he must prove the delay was unreasonable such that his condition "has been so changed that he cannot be restored to his former state." *Nosarzewski v. Nosarzewski*, 375 S.W.3d 820, 822 (Ky. App. 2012) (citation omitted). Essentially, he must prove it would be inequitable to allow Cristina to reverse a previous course of action. *Greer v.*

---

[8] The parties pled to criminal charges related to harboring of an undocumented individual as a domestic servant and agreed to pay $100,000.00 in fines. Cristina acknowledges Javier paid the fines.

*Arroz*, 330 S.W.3d 763, 766 (Ky. App. 2011) (citation omitted). Javier argues he was prejudiced because he paid the parties' criminal fines and $80,000.00 in property taxes. This is insufficient to prove he cannot be restored to his former state. Because Javier failed to prove he was prejudiced by Cristina's delay, this defense must fail.

As discussed above, waiver requires proof of both the party's knowledge of a right and her intention to waive it. *Vinson*, 136 S.W.3d at 469 (citation omitted). The record shows both parties chose to enter into various post-decree joint ventures intended to benefit them both. Other than the previously discussed $32,770.31 from the Fidelity account, nothing about these arrangements indicates Cristina intended to entirely waive her rights under the decree and/or agreed order.

Javier argues, in the alternative, the case should be transferred in its entirety to another division of the circuit court. He cites to no authority in support of this claim. *See* RAP 32(B)(4); RAP 32(A)(4). Absent any argument or citation to authority, we have no way of evaluating a party's claim. *Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky. App. 2005) (citation omitted). Furthermore, it is not this Court's responsibility to construct a party's legal arguments. *Id.* Accordingly, Javier is not entitled to relief.

## CONCLUSION

Based on the foregoing, the order of the Hardin Circuit Court, Family Division is reversed, in part, and remanded as to Cristina's entitlement to interest at the statutory rate under KRS 360.040(1) on the first payment of $41,407.75 and $2,500.00 from November 8, 2008, as well as on the second payment of $41,407.75 from October 9, 2010. The order of the family court is otherwise affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT/CROSS-APPELLEE:

Lyn Taylor Long
Elizabethtown, Kentucky

BRIEF FOR APPELLEE/CROSS-APPELLANT:

Barry Birdwhistell
Elizabethtown, Kentucky