RENDERED: JUNE 28, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1147-MR

ADAM WHEELER; COURTNEY L.
GRAHAM; AND STRAUSE LAW
GROUP, PLLC                                                         APPELLANTS

|                  |                                         |
|------------------|-----------------------------------------|
|                  | APPEAL FROM BULLITT CIRCUIT COURT       |
| v.               | HONORABLE RODNEY D. BURRESS, JUDGE      |
|                  | ACTION NO. 20-CI-00486                  |

CITY OF PIONEER VILLAGE,
KENTUCKY                                                             APPELLEE

OPINION
AFFIRMING IN PART,
REVERSING IN PART, AND REMANDING

** ** ** ** **

BEFORE: CETRULO, GOODWINE, AND KAREM, JUDGES.

CETRULO, JUDGE: Following a bench trial, the Bullitt Circuit Court awarded

Appellant Adam Wheeler ("Officer Wheeler") unpaid overtime wages, unpaid

vacation wages, and unpaid sick time wages that he accrued while employed as a

police officer for Appellee, City of Pioneer Village ("Pioneer Village" or "the

city"). However, in a subsequent order, the court reduced the overtime wage

award, vacated the sick time wage award, reaffirmed the vacation time wage award, denied additional liquidated damages, and denied retirement hazardous duty pay; and in a third order, the court granted limited attorney's fees and combined costs. Officer Wheeler appeals those post-trial orders on procedural grounds and because the court did not award interest on the judgment, additional liquidated damages, or retirement hazardous duty pay. Appellant Courtney L. Graham, legal counsel for Officer Wheeler, joins her client in this action to challenge the limited award of attorney's fees and combined costs. After review, we affirm in part, reverse in part, and remand.

## I.  FACTS & PROCEDURAL BACKGROUND

Pioneer Village employed Officer Wheeler from 2008 through August 2018. In July 2020, Officer Wheeler filed a complaint in the Bullitt Circuit Court asserting Pioneer Village participated in a "wage theft scheme" by "not accurately recording the time [Officer Wheeler] spent for all work performed and/or illegally alter[ing] and reduc[ing] [Officer Wheeler's] working hours." The relevant state statute of limitations, Kentucky Revised Statute ("KRS") 413.120, limited the action to within five years of the commencement of the action, *i.e.*, alleged unpaid wages from July 2015 until the end of his employment with the city in August 2018.

During a four-day trial in 2022 – on March 3, March 4, June 7, and October 4 – Officer Wheeler argued Pioneer Village did not properly pay him accrued overtime wages, vacation time wages, sick time wages, and retirement hazardous duty pay. As a result, Officer Wheeler argued that he was entitled to those unpaid wages plus additional liquidated damages, interest on the judgment, and attorney's fees and costs. To the contrary, Pioneer Village argued that Officer Wheeler was part of a group of police officers who agreed to work 36 hours one week, then 44 hours the next week, but only report two 40-hour weeks on their timesheets. Representatives from Pioneer Village – the mayor, city clerk, and police chief – testified that the city made this arrangement with the police officers because the city could not afford overtime wages, but wanted to give the police officers their preferred 12-hour shifts. (40/40-hour weeks would require 8-hour shifts.)

In March 2023, the court awarded Officer Wheeler $24,309.22 ($21,129.22 unpaid overtime wages, $2,620 unpaid vacation time wages, and $560 unpaid sick time wages). Further, the court determined that additional liquidated damages would not be appropriate because, pursuant to KRS 337.385, Pioneer Village acted in good faith. The court found that – for the retirement hazardous duty pay – Officer Wheeler did not meet his burden of proof and overruled that request. Finally, the court awarded Officer Wheeler an unspecified amount for

-3-

costs and reasonable attorney's fees to be determined following the submission of an affidavit of fees. Subsequently, legal counsel for Officer Wheeler tendered the requisite affidavits and requested $1,356.35 in costs and $91,031.50 in fees. Pioneer Village objected to these fees.

Six days after the court entered the March 2023 Order, Pioneer Village filed a motion – pursuant to Kentucky Rules of Civil Procedure ("CR") 59.05 and/or 60.02 – challenging the March 2023 Order. In May 2023, the court held oral arguments on Pioneer Village's motion to alter, amend, or vacate the March 2023 Order and Officer Wheeler's motion for attorney's fees. In pertinent part, Pioneer Village argued: (a) the court erred in its mathematical calculations for overtime wages and Wheeler was only due $2,784.36 in overtime wages; and, (b) the court erred in awarding unpaid sick time because a local ordinance stated that unpaid sick time was forfeited upon employment termination. Officer Wheeler countered, in part, that none of Pioneer Village's arguments were timely because the city did not argue them during the four-day trial.

In July 2023, the court entered an order overruling in part and granting in part Pioneer Village's CR 59.05 motion[1] ("July 2023 Order"). This July 2023 Order reduced the overtime wage award from $21,129.22 to $2,823.57;

---

[1] Although Pioneer Village argued for relief pursuant to CR 59.05 and/or 60.02, the trial court treated the motion as pursuant to CR 59.05 alone; as we are a court of review, so shall we.

vacated the award of unpaid sick time due to a local ordinance stating that upon employment termination, an employee forfeited any accumulated sick time; and made no change to the vacation time award of $2,620. Overall, the court decreased Officer Wheeler's award from $24,309.22 to $5,443.57.

Ten days later, Officer Wheeler filed a motion – pursuant to CR 59.05 and/or 60.02 – challenging the July 2023 Order. Officer Wheeler argued, in part, that the court improperly altered its March 2023 Order and that this July 2023 Order failed to address retirement hazardous duty pay, additional liquidated damages, interest on the judgment, or attorney's fees. In August 2023, the court entered an order addressing both Officer Wheeler's motion for attorney's fees and his motion to alter, amend, or vacate the July 2023 Order ("August 2023 Order").

This August 2023 Order awarded $2,500 for combined costs and attorney's fees. The court found the requested $91,031.50 in fees "to not be reasonable in relation to the claim" and found "counsel's rate of $365/hour to exceed a reasonable hourly rate." The court did not elaborate as to how it arrived at $2,500 or why it combined costs and fees. Also, the court overruled Officer Wheeler's motion to alter, amend, or vacate the July 2023 Order and reaffirmed Officer Wheeler's $5,443.57 award for unpaid wages. Officer Wheeler timely appealed.

## II. ANALYSIS

On appeal, Officer Wheeler makes both procedural and substantive arguments. He asserts the trial court erred by granting in part Pioneer Village's CR 59.05 motion and abused its discretion by not awarding interest on the judgment, additional liquidated damages, retirement hazardous duty pay, and reasonable attorney's fees. We will discuss each argument in turn and include additional facts as necessary.

### A. CR 59.05 Motion

In its March 2023 Order, the trial court awarded Wheeler $24,309.22 ($21,129.22 unpaid overtime wages; $2,620 unpaid vacation; and $560 unpaid accrued sick time) plus an unspecified amount for attorney's fees. Shortly thereafter, Pioneer Village filed a motion to alter, amend, or vacate that order, which the court granted in part. On appeal, Officer Wheeler argues that Pioneer Village did not establish sufficient grounds for a CR 59.05 motion and thus, the court erred in granting the motion. However, we do not agree.

We review a trial court's ruling on a motion made pursuant to CR 59.05 under an abuse of discretion standard. *Bowling v. Kentucky Dep't of Corr.*, 301 S.W.3d 478, 483 (Ky. 2009) (citation omitted). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co. v.*

-6-

*Thompson*, 11 S.W.3d 575, 581 (Ky. 2000) (citing *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)). CR 59.05 permits motions to alter, amend, or vacate a judgment within 10 days. "Generally, a trial court has unlimited power to amend and alter its own judgments." *Bailey v. Bailey*, 399 S.W.3d 797, 801 (Ky. App. 2013) (citing *Gullion v. Gullion*, 163 S.W.3d 888, 891-92 (Ky. 2005)). Although the rule itself does not set forth grounds for relief, Kentucky courts apply the federal counterpart, Federal Rules of Civil Procedure 59(e), in limiting the grounds:

> There are four basic grounds upon which a Rule 59(e) motion may be granted. First, the movant may demonstrate that the motion is necessary to correct manifest errors of law or fact upon which the judgment is based. Second, the motion may be granted so that the moving party may present newly discovered or previously unavailable evidence. Third, the motion will be granted if necessary to prevent manifest injustice. Serious misconduct of counsel may justify relief under this theory. Fourth, a Rule 59(e) motion may be justified by an intervening change in controlling law.

*Gullion*, 163 S.W.3d at 893 (citations omitted).

In the case before us, the first factor justified the trial court granting Pioneer Village's relief under CR 59.05: "the motion [was] necessary to correct manifest errors of law or fact upon which the judgment [was] based." *See id.* Simply, Pioneer Village's CR 59.05 motion presented new numbers, *not* new

evidence. In fact, the two "corrections" that the trial court made to its March 2023 Order were explicitly rooted in evidence from trial.

First, Pioneer Village pointed to testimony, pay stubs, and timesheets admitted during trial to argue the unpaid overtime equated to $2,823.57, and not the $21,129.22 the court awarded in its March 2023 Order. In the March 2023 Order, the court's math was *not* clear, but its words were. The March 2023 Order clearly stated that "Pioneer Village is required to pay to [Officer Wheeler] overtime of 4 hours per week during each weekly period where he worked 44 hours." Those four-hour increments were the only unpaid overtime wages the court awarded. Officer Wheeler argued that he also worked overtime beyond those four hours every other week, but the court found that evidence insufficient:

> [Officer Wheeler] has failed to meet [his] burden of proof to establish the specific number of hours of additional overtime which is claimed, nor has he met his burden of proof showing numbers of lunches or breaks he was denied. A guess or approximation is insufficient.

The *words – i.e.*, the words describing the legal conclusions relating to overtime – in the March 2023 Order and the July 2023 Order are consistent. The July 2023 Order only updated the *mathematical calculations* paired with those words. The July 2023 Order again stated that Officer Wheeler was entitled to unpaid overtime wages for the four hours each week on the weeks he worked 44 hours from July 2015 through July 2018. This July 2023 Order, unlike the

-8-

previous order, clarified the *calculations* in reaching the final unpaid overtime wage award. The parties agree that overtime wages for Officer Wheeler equaled one and one half (1-½) times his regular hourly rate. KRS 337.285(2). However, because Officer Wheeler had already received wages for 80 straight hours, he was only due *half* his hourly rate for the remaining 4 hours of each 44-hour week.

From July 2015 through December 2015, Officer Wheeler worked 26 weeks, 13 of those weeks were 44-hour weeks; his hourly rate during that timeframe was $15.70/hour, putting his half-time at $7.85. Thus, 13 weeks x 4 hours x $7.85/hour = $408.20 unpaid overtime.

From January 2016 through June 2016, Officer Wheeler worked 26 weeks, 13 of those weeks were 44-hour weeks; his hourly rate during that timeframe was $16.50/hour, putting his half-time at $8.25. Thus, 13 weeks x 4 hours x $8.25/hour = $429 unpaid overtime.

From July 2016 through December 2016, Officer Wheeler worked 26 weeks, 13 of those weeks were 44-hour weeks; his hourly rate during that timeframe was $16.93/hour, putting his half-time at $8.465. Thus, 13 weeks x 4 hours x $8.465/hour = $440.18 unpaid overtime.

From January 2017 through June 2017, Officer Wheeler worked 26 weeks, 13 of those weeks were 44-hour weeks; his hourly rate during that

timeframe was $17.93/hour, putting his half-time at $8.965. Thus, 13 weeks x 4 hours x $8.965/hour = $466.18 unpaid overtime.

Finally, from July 2017 through July 8, 2018, Officer Wheeler worked 54 weeks, 27 of those weeks were 44-hour weeks; his hourly rate during that timeframe was $20/hour, putting his half-time at $10. Thus, 27 weeks x 4 hours x $10/hour = $1,080 unpaid overtime.

Therefore, the court determined Officer Wheeler's unpaid overtime award should have been $2,823.57[2] ($408.20 + $429 + $440.18 + $466.18 + $1,080). These "new" overtime numbers set forth in the July 2023 Order are fair, reasonable, and consistent with the court's intent in the March 2023 Order. Also, these numbers represent a correction of fact upon which the judgment is based and therefore within the permissible grounds of a CR 59.05 motion. *See Gullion*, 163 S.W.3d at 893 (citation omitted). As such, the trial court did not abuse its discretion in "fixing" its math.

Next, Pioneer Village – in its CR 59.05 motion – also requested a correction in the unpaid sick time wage award. Pioneer Village pointed to Defendant's Exhibit 2 (Ordinance No. 99-003) from trial that stated "[u]pon termination of employment, employee shall forfeit any sick time accumulated." The March 2023 Order awarded accrued sick time wages, but the July 2023 Order

---

[2] The numbers more accurately total $2,823.56, but a penny discrepancy is negligible.

revoked that award and stated, "[t]he Court finds the ordinance [No. 99-003] applicable and that [Officer Wheeler] is not entitled to the $560.00 unpaid accrued sick time in [the March 2023 Order]." The ordinance in question was not new evidence, but rather, it was presented and admitted during trial. Officer Wheeler did not, and does not, challenge the ordinance itself, only Pioneer Village's ability to call it to the trial court's attention via a CR 59.05 motion. However, such a correction falls within the permissible grounds of a CR 50.05 motion; the motion was "necessary to correct [a] manifest error[] of law." *Id.* (citation omitted). Pioneer Village properly used a CR 59.05 motion to seek a correction in the application of law in a final judgment. *See Ehly v. State Bd. of Elections*, 667 S.W.3d 10, 14 (Ky. App. 2022) ("The primary purpose of CR 59.05 is to allow parties to call errors of law and fact to the trial court's attention before an appeal."). The trial court's application of the ordinance was not arbitrary, unreasonable, unfair, or unsupported by sound legal principles. As such, the court did not abuse its discretion in applying the ordinance that was admitted at trial but overlooked in its previous order.

### B. Interest, Additional Liquidated Damages, Retirement

> An interpretation of a statute and legal conclusions are a matter of law, reviewed *de novo*. *Commonwealth v. Gaitherwright*, 70 S.W.3d 411, 413 (Ky. 2002); *Nash v. Campbell County Fiscal Court*, 345 S.W.3d 811, 816 (Ky. 2011). A trial court's findings of fact are reviewed for clear error. (CR) 52.01; *Reichle v. Reichle*, 719 S.W.2d

442, 444 (Ky. 1986). Application of the law to the facts will be reviewed *de novo. S.B.B. v. J.W.B.*, 304 S.W.3d 712, 716 (Ky. App. 2010).

*Doyle v. Doyle*, 549 S.W.3d 450, 454 (Ky. 2018).

KRS 360.040 mandates that a judgment "*shall* bear six percent (6%) interest compounded annually from the date the judgment is entered." (Emphasis added.) The only exceptions within this rule – not pertinent here – are for unpaid child support, interest expressly agreed upon within a written obligation, or unliquidated damages. *Id.* The judgment award in question – unpaid overtime wages and unpaid vacation wages – was rooted in liquidated claims. "A liquidated claim is capable of ascertainment by mere computation, can be established with reasonable certainty, can be ascertained in accordance with fixed rules of evidence and known standards of value, or can be determined by reference to well-established market values." *Doyle*, 549 S.W.3d at 455 (quoting *3D Enters. Contracting Corp. v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 174 S.W.3d 440, 450 (Ky. 2005)) (internal quotation marks omitted). Here, the unpaid overtime wages and unpaid vacation wages were a result of simple math, a "mere computation." *See id.* In fact, during the May 2023 hearing, the trial court – in discussing Pioneer's Village's requested changes to the March 2023 Order – stated, "Well Folks, it should just be a matter of math." Thus, the claim was liquidated and must bear interest at the statutory rate. As such, on remand the trial

-12-

court shall impose the statutory interest on the award within the July 2023 Order from the date of its entry.

Next, Officer Wheeler argues the trial court erred by not awarding *additional* liquidated damages permitted by KRS 337.385. More specifically, Officer Wheeler asserts that the trial court's finding that Pioneer Village acted in good faith was an abuse of discretion because Pioneer Village admitted to altering timesheets after he submitted them, and the city representatives improperly threatened officers to report no more than 40 hours worked in a week.

KRS 337.385(1) states that an employer is liable for unpaid wages and overtime compensation plus "*an additional equal amount as liquidated damages*, and for costs and such reasonable attorney's fees *as may be allowed by the court*." (Emphasis added.) KRS 337.385(2) places the burden on the employer to show "to the satisfaction of the court that the act or omission giving rise to such action [not paying the earned and/or accrued wages] was in good faith and that he or she had reasonable grounds for believing that his or her act or omission was not a violation of KRS 337.020 to 337.285[.]" Additionally, this statute grants the court discretion to "award no liquidated damages, or award any amount thereof not to exceed the amount specified in this section." *Id.*

KRS 337.385 contains nearly identical language to 29 United States Code Annotated § 260 of the Federal Labor Standards Act. When a Kentucky Act

-13-

is similar to a Federal Act, it will normally be interpreted consistent with federal law. *Ammerman v. Bd. of Educ., of Nicholas Cty.*, 30 S.W.3d 793, 797-98 (Ky. 2000) (citation omitted)). This standard of appellate review involves mixed questions of law and fact. A determination whether an employer acted in good faith and on reasonable grounds is reviewed for clear error; a trial court's legal conclusions are reviewed *de novo. Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1566 (11th Cir. 1991). If an employer establishes good faith and reasonable grounds, the decision to deny or limit liquidated damages is reviewed for an abuse of discretion. *Id.* Again, "[t]he test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co.*, 11 S.W.3d at 581. "[D]ue regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01. Further, "[t]his task is exclusively within the province of the trial court." *C.W. Hoskins Heirs v. Wells*, 560 S.W.3d 852, 856 (Ky. 2018). The question is not whether we would have reached the same conclusion, but whether the trial court's decision, after assessing the credibility of the witness, was supported by substantial evidence. *Id.* (citations omitted).

The March 2023 Order found that additional liquidated damages were not appropriate because Officer Wheeler signed and submitted timesheets that did not reflect overtime hours; Pioneer Village willingly complied with a 2019 audit of

-14-

their payroll system and in good faith tendered payment to correct payroll errors; and, Pioneer Village "clearly thought that [Officer Wheeler] was part of the group which had agreed in their meeting to work the 44 hours in one week and the 36 hours in the other week." In essence, the trial court determined that, although Pioneer Village failed to properly pay Officer Wheeler, that failure was not done in bad faith and did not warrant additional liquidated damages.

The court referenced Officer Wheeler's timesheets that he signed and verified. Although Officer Wheeler said he believed he was owed overtime pay, he admitted to submitting 40-hour per week timesheets. Further, through a 2019 audit, Pioneer Village learned that the city was required to pay overtime for any hours worked over 40 in a single week. After that audit, Pioneer Village issued checks to employees matching the amount of unpaid overtime suggested by the auditor. Officer Wheeler, believing the check to be of an incorrect amount, refused the check. However, the city's willingness to issue the checks and change their overtime payroll practices clearly and reasonably contributed to the court's determination that the city acted in good faith. Lastly, the court heard testimony about, and gave credence to, an agreement between the chief of police and the city's police officers that allowed officers to work their preferred 12-hour shifts in exchange for reporting two 40-hour weeks instead of the actual worked 36 and 44-hour weeks. While an agreement between an employee and the employer to

work for less than the applicable wage rate is not a *defense*, KRS 337.385(2), it is not unreasonable for the court to consider this agreement as contributing to the employer's good faith. In other words, even though the city still owed police officers for their earned overtime hours, the city could have believed their agreement with officers was permissible. Thus, the court's decision to deny additional liquidated damages was not an abuse of discretion because it was not arbitrary, unreasonable, unfair, or unsupported by sound legal principles. As such, we affirm the trial court's denial for additional liquidated damages under KRS 337.385.

Next, Officer Wheeler argues the trial court abused its discretion in refusing to award "CERS[3] Retirement Hazardous Duty wages." We note an interpretation of a statute and legal conclusions are a matter of law, reviewed *de novo. Doyle*, 549 S.W.3d at 455 (citation omitted).

The March 2023 Order stated that Officer Wheeler failed to meet his burden of proof for retirement hazardous duty pay because he supplied only an average of the entitled employer contribution percentages and "[t]he law does not allow for averages of damages." However, on appeal, Officer Wheeler points out that he – in his proposed findings of fact and conclusions of law tendered in November 2022 – supplied exact annual employer contribution percentages for the

---

[3] County Employees Retirement System.

years from 2015 through 2018. Yet, that cart flew past the horse; before determining Pioneer Village's contribution percentage, Officer Wheeler needed to establish that he was entitled to such contributions.

KRS 337.055 provides that "[a]ny employee who leaves or is discharged from his employment shall be paid in full all wages or salary earned by him[.]" Wages "include[] any compensation due to an employee by reason of his or her employment, including salaries, commissions, vested vacation pay, overtime pay, severance or dismissal pay, earned bonuses, and any other similar advantages agreed upon by the employer and the employee or provided to employees as an established policy." KRS 337.010(1)(c)1. Officer Wheeler labels the pay in question a "wage," but does not cite any precedent or statute that includes retirement benefits within the definition of "wages." In fact, retirement benefits are a fringe benefit, *not* a wage.

> [B]enefits, which include such things as retirement plans, health and disability insurance, and even life insurance, are commonly known as "fringe benefits." While these benefits certainly cost the employer, they are not considered to affect the pay, wages, or compensation of the employee but are considered an additional benefit.

*Caldwell Cnty. Fiscal Ct. v. Paris*, 945 S.W.2d 952, 954 (Ky. App. 1997).

Here, Officer Wheeler argued that retirement hazardous duty pay was a wage, and that an employer owes all earned and accrued *wages* after employment ends. However, as retirement benefits are fringe benefits, not wages, Officer

-17-

Wheeler needed to establish that his employer was required to pay *fringe benefits* on all earned and accrued wages after his employment ended. Officer Wheeler did not establish that he was entitled to this specific type of compensation or what aspects of KRS 78.530[4] are applicable to both Officer Wheeler and Pioneer Village. Thus, Officer Wheeler has not met his burden of showing he was entitled to these payments. *See City of Louisville, Div. of Fire v. Fire Serv. Managers Ass'n ex rel. Kaelin*, 212 S.W.3d 89, 94-95 (Ky. 2006) (Although factually distinct, the Kentucky Supreme Court found the plaintiff in a wage and hour claim bears the burden of proving he/she is entitled to the alleged unpaid wage or benefit.). Thus, we affirm the trial court's denial of retirement hazardous duty pay.

### C. Attorney's Fees and Costs

We review a trial court's decision to award statutory attorney's fees and costs under an abuse of discretion standard. *Hunt v. N. Am. Stainless*, 482 S.W.3d 796, 799 (Ky. App. 2016).

Shortly after the March 2023 Order, but before the July 2023 Order, Officer Wheeler's legal counsel requested $1,356.35 in costs and $91,031.50 in fees. She supported her motion/notice with an hourly breakdown of 299.10 hours

---

[4] Officer Wheeler states generally that "CERS mandates retirement contribution for individuals, like Wheeler, who worked in hazardous duty positions." However, clarity and specificity are necessary; KRS 78.530 is a broad statute about hazardous duty coverage with a range of applications, levels, timeframes, and participation plans.

performed from three attorneys ($325 to $365/hour), five law clerks ($100 to $165/hour), and two paralegals ($165/hour). She tendered a personal affidavit of her legal experience and examples of similar rates for similar work in the same region.

The August 2023 Order determined the request for $91,031.50 in fees was not reasonable in relation to the claim, an award of $5,443.57, and that Officer Wheeler's legal counsel's rate of $365/hour exceeded "a reasonable hourly rate." The court awarded $2,500 in combined attorney's fees and costs, but did not elaborate on how it arrived at this amount. On appeal, Officer Wheeler's counsel argues that the trial court abused its discretion by combining the fees with costs and by failing to support or explain the award of $2,500. While the trial court has a great deal of discretion in regard to fees, in this case, we must agree.

As discussed, KRS 337.385(1) holds an employer liable for failing to pay an employee full and fair compensation and "costs and such reasonable attorney's fees as may be allowed by the court." To calculate those reasonable attorney's fees in a wage and hour claim, a court should apply the "lodestar" method – outlined in *Meyers v. Chapman Printing Co.*, 840 S.W.2d 814, 826 (Ky. 1992), and *Hensley v. Eckerhart*, 461 U.S. 424, 433-39, 103 S. Ct. 1933, 1939-43, 76 L. Ed.2d 40 (1983). *Hunt*, 482 S.W.3d 798 (citation omitted). "Under *Meyers*, attorney fees awarded should be the product of counsel's reasonable hours,

multiplied by a reasonable hourly rate, which may then be adjusted to account for various special factors in the litigation." *Id.* As such, we remand this matter simply for additional findings, consideration of the factors outlined in our precedent, and an award of attorney's fees consistent with the evidence and this lodestar method.

## III. CONCLUSION

Therefore – we affirm in part, reverse in part, and remand – the March 2023 Order, the July 2023 Order, and the August 2023 Order: we AFFIRM the denial of liquidated damages, denial of sick time wages, denial of retirement hazardous duty pay, reduced overtime wage award, and vacation time wage award; we REVERSE and REMAND for reconsideration of interest on the judgment and attorney's fees and costs.

ALL CONCUR.

| BRIEFS FOR APPELLANTS: | BRIEF FOR APPELLEE: |
|---|---|
| Courtney L. Graham<br>Louisville, Kentucky | Mark E. Edison<br>Shepherdsville, Kentucky |